MASTERS *v.* MASSACHUSETTS BONDING & INSURANCE COMPANY.

1. INSURANCE—SURETY—NOTICE TO SURETY OF DEFAULT—WAIVER OF LACK OF TIMELINESS.

Defendant surety on bond *held*, to have waived plaintiffs' lack of timeliness in giving written claim for loss sustained by employee's defalcation and in filing sworn proofs of loss, where it appears defendant furnished forms for proof of loss and accepted them after expiration of times for such action provided in the bond and no prejudice to defendant appears to have resulted from failure of literal, as distinguished from substantial, compliance, and defendant failed to plead the defenses in its answer (Court Rule No 23, § 4 [1945]).

2. SAME—LOSS—EVIDENCE.

Evidence in action against surety on bond *held*, ample to go to jury as to losses caused through the fraudulent or dishonest acts of covered employee, hence, denial of defendant's motion for a directed verdict was proper.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur, Insurance §§ 1105, 1147.
[3] 20 Am Jur, Evidence § 403 *et seq.*
[4] 58 Am Jur, Witnesses § 4.

3. EVIDENCE—FAILURE TO PRODUCE CHECKS—BEST EVIDENCE.

Plaintiffs' testimony that payments of tax obligations had been made by 2 checks was properly received notwithstanding checks were not produced, where trial court instructed jury that the failure to produce the checks raised a presumption that the checks, if produced, would be unfavorable to the particular item of their claim.

4. WITNESSES—CALLING    BY    COURT—CROSS-EXAMINATION—COURT RULES.

It was not error for trial court to call as a witness the employee who was covered by defendant's surety bond in action by employers and permitting both parties to cross-examine him fully respecting his operations of the store he was hired to manage, the pertinent court rule empowering the court so to do being given a liberal construction in "the furtherance of justice" (Court Rule No 32 [1945]).

Appeal from St. Clair; Black (Eugene F.), J. Submitted October 2, 1956.   (Docket No. 1, Calendar No. 46,744.)   Decided July 31, 1957.

Assumpsit by Ernest Masters and Winifred Masters against Massachusetts Bonding & Insurance Company, a corporation, on fidelity bond for discrepencies in operation of store.   Verdict and judgment for plaintiffs.   Defendant appeals.   Affirmed.

*Benedict & DePuy,* for plaintiffs.

*William V. Simpson (Watson & Inman,* of counsel), for defendant.

SMITH, J.   This is a suit upon a surety bond.   It was issued by defendant to the plaintiffs under the following circumstances:

The plaintiffs, Mr. and Mrs. Masters, were the owners of a beer and grocery store in the city of Port Huron.   Mr. Masters was a farmer and his son operated the store for him until September of 1952, when he (the son) decided to go into business for

himself.   Mr. Masters then approached Albert Ellis about running the store and between them they reached an agreement.   It provided, in substance, that Ellis should operate and manage the store; that he work specified hours and days; that he pay each month to Masters, from October through April, the sum of "$250 from the net earnings" and $300 per month thereafter.   Net earnings were defined thus: "In computing net earnings hereunder gain or loss in inventory at cost shall be considered, and all expenses of doing business and keeping the store in good repair and condition for business shall be charged, except that principal shall pay all real and personal property taxes and fire insurance."

In addition, it was agreed that the employee (Ellis) should "furnish a $5,000 surety bond to the principal, guaranteeing that the employee will, at the termination of his employment, have on hand a stock of equal value to the stock as shown by the inventory of September 30, 1952, attached hereto." Pursuant to this provision of their contract, the defendant issued to plaintiffs, as the assured, what defendant describes as a "dishonesty bond," pertinent parts of which are set forth hereunder,* and which is involved in this suit.

---

* "1. 'Insuring Agreement—Employee Dishonesty Coverage—Form B' Through any fraudulent or dishonest act or acts, committed anywhere by any of the employees acting alone or in collusion with others, including loss of money and securities and other property through any such act or acts of any of the employees, and including that part of any inventory shortage which the assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the employees, the amount of insurance on each of such employees being the limit of liability applicable to this insuring agreement 1.

"2. 'The foregoing insuring agreements and general agreements are subject to the following conditions and limitations:'

"(A) 'Loss—Notice—Proof—Legal Proceedings, Section 6:' As soon as practicable but in any event not later than 15 days after discovery by the assured of any loss or of any occurrence which may give rise to a claim, the assured shall give the company written notice thereof and within 4 months after such discovery shall file with the company affirmative itemized proof of loss, duly sworn to.

Mr. Masters visited the store at least once a month "to get my share of the earnings that belonged to me." The payment due to plaintiffs on May 1, 1953, however, was not made, and Mr. Masters suspected that the inventory was short. He thereupon consulted with his counsel who "prepared a notice to Mr. Ellis fixing a date on which an inventory would be taken and requesting that he be present so there could not be any question about what that count-up would show." The inventory was taken and, as a result thereof, certain shortages were discovered, together with outstanding unpaid accounts. Plaintiffs thereupon took over operation of the store and suit was commenced against defendant for the amount of the inventory shortage and unpaid accounts. Jury trial was had. At the close of plaintiffs' proofs motion for directed verdict was made and denied, and upon the close of all proofs the case went to the jury, which returned a verdict for plaintiffs. Motions for judgment *non obstante veredicto* and for new trial were denied and defendant is before us on a general appeal.

Defendant urges with much vigor that plaintiffs failed to comply with the notice requirements of the

If any claim under insuring agreement 2, 3 or 4 is due to an occurrence which is a violation of law, the assured shall also give immediate notice thereof to the public police or other peace authorities having jurisdiction. Proof of loss under insuring agreement 5 shall include the instrument which is the basis of claim for such loss. or if it shall be impossible to file such instrument, the affidavit of the assured or the assured's bank of deposit setting forth the amount and cause of loss shall be accepted in lieu thereof. The assured, upon request of the company, shall render every assistance, not pecuniary, to facilitate the investigation and adjustment of any claim. No suit to recover on account of loss under this policy shall be brought until 90 days after proof of loss as required herein shall have been furnished, nor at all unless commenced within 2 years from the date upon which the loss was discovered by the assured. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that permitted to be fixed by agreement under any statute controlling the construction of this policy, the shortest permissible statutory limitation of time shall govern and shall supersede any condition of this policy inconsistent therewith."

bond and are therefore not entitled to recover from defendant. This claim arises from the requirements of section 6 of the bond (hereinabove quoted) which, in substance, require (1) that written notice be given to defendant "as soon as practicable but in any event not later than 15 days" after discovery of any loss, and (2) that sworn proofs of loss must be filed within 4 months after discovery of loss. Defendant asserts that there was no compliance with these provisions.

With respect to notice of loss, Mr. Wilbur Davidson, attorney at law and then counsel for plaintiffs, prepared a letter addressed to Ellis reading as follows:

"Mr. Albert A. Ellis                    June 9, 1953
"1008 Lapeer Avenue
"Port Huron, Michigan
            "Re: Weston's Beer Store
*"Dear Sir:*
"This letter will notify you that your employment under the agreement with me dated September 30, 1952 is hereby terminated because:

"(a) You have failed to pay to me as employer the first $300 from the net earnings of the store for the month of May, 1953;

"(b) You have consistently and repeatedly failed to observe the working hours set forth in said agreement;

"(c) You have dissipated the inventory of the business and have retained money received from the sale from said inventory for your own use, and have not replaced the inventory and maintained it at the same value as of September 30, 1952 as you are required to do under said contract.

"Specifically, the inventory of merchandise on hand September 30, 1952 was $5,805.35. An inventory taken June 8, 1953 shows a total of only $......

"This letter will also be a notice to you to restore the inventory or the cash value thereof immediately to the same figure as of September 30, 1952, or I

shall take whatever legal steps are necessary to protect my interest.

"A copy of this notice is given to Massachusetts Bonding and Insurance Company as surety on its Policy No CD–733720 and as notice to it that I intend to hold you and the surety liable for the above inventory shortage of $.....

"Yours sincerely,<br>/s/ "Ernest Masters

"cc:   Massachusetts Bonding
        and Insurance Company
        c/o Wittliff Agency"

This letter, defendant admits, was "shown by the plaintiffs' attorney sometime within 10 days following June 9th, to defendant's local agent." As counsel testified:

"I took over (to Wittliff, the local agent from whom the bond had been obtained) the draft of a notice to Ellis which I had prepared and a copy of which was going to be sent to Massachusetts Bonding Company, but because I could not complete the information in the notice, I realized that I could not get it to them within 10 days which I believe, as I remember it, was a 10-day notice required in the bond, so I took it to his office and showed him the information we had up until that date and Wittliff stated that he would get me the claim forms.

"My memory of it was that there was a 10-day period which I was aware of and that is the purpose for which I prepared this notice that I took over there. If it was 15, of course, the bond speaks for itself, but I had in mind that it was a fairly short period of time that I got the information over there, within that time."

He also testified:

"I did not deliver that notice to the bonding company because we could never actually complete the accounting, more inventory bills kept coming in and every time we would think we had it there would be

some bills come in that we had not known about so I cannot give you the date exactly, but I know that I was aware of the 10-day notice limitation after discovery of a shortage and I went to Jack Wittliff's office, and he was the agent that issued this bond, and I showed him the copy of this notice that I had prepared and told him that I had not been able to deliver it because we had never been able to complete a final figure of what the shortage was and he said that the company had standard forms to make claims of this sort and that he would obtain the forms."

It thus appears that defendant had actual notice of loss within the 15-day period required by the bond, and, moreover, that it obtained such notice by examination of the letter above quoted. Defendant argues that this letter was merely "showed" to the agent in order that he might "examine it" but that it was not "delivered" to him. The distinction tendered is both subtle and fragile. But, it is also insisted, there was no sworn proof of loss filed "within 4 months from June 8, 1953." As to this, plaintiffs contend that they had repeatedly requested the "standard forms" (both of the local agent and another company representative, Paul D. Gimbey) and had repeatedly been promised the same, but that they were not furnished until September 28, 1953, being filed thereafter by plaintiffs' attorney on November 10, 1953. In the meantime, however, on August 5, 1953, plaintiffs submitted a detailed and itemized report, together with a statement that "we hereby make claim under insuring agreement 1 of the above-captioned bond for $2,086.60." This claim, however, we note, was not sworn.

Plaintiffs' answer is 2-fold. "Plaintiffs insist that the defendant insurer, when it denied liability, did not deny on the grounds so alleged* and that it did

---

* Those material to our consideration on appeal are:

" '6. That the plaintiffs proved that they had not presented a

not reserve in its denial, by general language or otherwise, the defenses so urged." Both of plaintiffs' points are well taken. At no time did the local agent of the company reject the notices actually given. Moreover, the requested forms were promised, not only by the local agent but by Mr. Gimbey, and they were, in fact, not only furnished (after a time) but accepted in their completed form. If there was protest or objection by the defendant as to the timeliness thereof, its presence in the record has not been pointed out to us. It was not until January that the claim was denied, the denial then being placed, not on the ground that timely notices had not been given, but on the ground that "we still do not have proof of the principal's [employee's] infidelity." Under such circumstances defendant may be taken to have waived its now-asserted objections as to timeliness. *Crystal Ice Co.* v. *United Surety Co.,* 159 Mich 102. We note, in passing, that defendant does not show to us, nor did it to the trial court, any prejudice to it resulting from failure of literal (as distinguished from substantial) compliance. We note, also, that defendant's pleadings do not in terms plead these defenses, as required by Court Rule No 23, § 4 (1945). With respect thereto, we held in *Larsen* v. *General Casualty & Surety Co.,* 242 Mich 4, 8, 9, as follows:

"Our practice is controlled by the court rule, which provides that if defendant shall rely *upon any breach of any of the conditions,* et cetera, he shall give notice. It will be noted that no exception in favor of conditions precedent is made. The court rule covers precedent as well as subsequent conditions. The an-

_____

written claim to the defendant within the 15 days of discovery of the loss and that such claim is a condition precedent to the suit;

" '7. That the plaintiffs admitted that they failed to file a proof of loss within 4 months of the discovery of the loss and failed to prove a waiver of such requirement on the part of the defendant which are conditions precedent to the suit involved herein.' "

notator of the article of insurance in Corpus Juris in stating the general rule notes the fact that the general rule is not in force in Michigan, but is controlled by a court rule. 33 CJ, pp 100, 101.

"The learned counsel for the defendant grow somewhat impatient over the fact that this is a technical point. It is a technical point, but counsel, in their zeal for their client, evidently overlook the fact that they are standing upon ground quite as narrow when they insist that notice of the accident should have been given to the defendant *in writing* instead of *orally.*"

Defendant complains, also, that the court did not direct a verdict in its favor on the ground that plaintiffs had failed to prove a loss within the provisions of the bond. With respect to this allegation of error it is noted that the court limited the jury's consideration to 2 items, only, of the declaration, namely, a claim of inventory shortage of $1,187.25 and an additional claim represented in the bill of particulars as "Federal employment tax, first quarter, 1953, total $570.61." The testimony taken in the light most favorable to plaintiffs showed that Mr. Ellis was employed as manager of plaintiffs' store, to work specified hours, and to be paid from the "net" after making disbursements for "rent" payable to plaintiffs, and expenses of operation and inventory replenishment and maintenance. The testimony also tends to establish that Ellis paid to himself a "salary" from the cash receipts without having computed or established any right thereto in accordance with the provisions of the contract. "I do not know," he testified, "what the net profits of the store were for the weeks I paid myself a salary." There was also testimony that the employees' tax deductions were commingled with other cash and the taxes themselves left unpaid, with the result that plaintiffs were compelled to pay the same with penalties and interest.

With respect to such funds, as the trial court properly observed, the position of Ellis was actually that of a trustee. There was ample here to go to the jury as to losses caused through the fraudulent or dishonest acts of employee Ellis.

Mrs. Masters testified that she made payment to the bureau of internal revenue (as described on the bill of particulars) by means of 2 checks, neither of which was produced in court. There was some testimony indicating that 1 had been the object of unsuccessful search. There was no error in the receipt of such testimony under the circumstances. The jury was instructed in this regard, that "they (plaintiffs) have not explained their failure to produce these checks. In these circumstances there is a presumption that the checks, if produced, would be unfavorable to this particular item of their claim."

Nor was there error in the court's calling, as a witness, the store manager, Albert Ellis, in questioning him respecting his operations, and in permitting both parties full cross-examination. Court Rule No 32 (1945), framed in the interests of "the furtherance of justice," should receive a liberal construction.

There is no merit in other matters complained of and the judgment is affirmed. Costs to appellees.

DETHMERS, C. J., and SHARPE, EDWARDS, KELLY, and CARR, JJ., concurred.

BLACK, J., did not sit.

VOELKER, J., took no part in the decision of this case.